UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARNELL R. HICKS,

*Plaintiff*,

v.

DETECTIVE CHAVEZ,

*Defendant*.

No. 23-CV-8088 (KMK)

OPINION & ORDER

Appearances:

Darnell R. Hicks
Peekskill, NY
*Pro se Plaintiff*

Lauren Caspie, Esq.
Morris Duffy Alonso Faley & Pitcoff
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Darnell Hicks ("Plaintiff"), proceeding pro se, brings this Action against Sergeant Jafeth Chavez ("Defendant"), pursuant to 42 U.S.C. § 1983, alleging his Fourth Amendment right to be free from sexual harassment was violated when Defendant took photos of his alleged head and wrist injuries. (*See generally* Compl. (Dkt. No. 1).) Before the Court is Defendant's Motion for Summary Judgment (the "Motion"). (*See* Not. of Mot. (Dkt. No. 61).) For the reasons set forth below, the Motion is granted.

# I. Background

## A. Factual Background

The following facts are taken from Defendant's statement of facts pursuant to Local Civil Rule 56.1, (Def.'s Statement of Fact ("Def.'s 56.1") (Dkt. No. 61-1)), and the admissible evidence submitted by Defendant.[1]

On April 21, 2022, Plaintiff was arrested for disorderly conduct by non-party Officer Encarnacion and taken to the Village of Ossining Police Department (the "Station") for processing. (Def.'s 56.1 ¶¶ 13–23; *see also id.* ¶¶ 1–12 (describing the conduct leading up to Plaintiff's arrest).) Defendant was working and present at the Station when Plaintiff was held in custody. (*Id.* ¶ 34.)

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short[] and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party, in turn, must submit "a correspondingly numbered paragraph . . . responding to[] each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Loc. Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule," *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417–18 (2d Cir. 2009) (same).

"'Pro se litigants are not excused from meeting the requirements of Local Rule 56.1,' and '[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.'" *Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) (quoting *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021), then quoting *T.Y.*, 584 F.3d at 418); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same). Here, Defendant filed and served his 56.1 Statement on Plaintiff and notified Plaintiff of the consequences of not responding to his 56.1 Statement, as required by Local Rule 56.2. (*See* Rule 56.2 Not. to Pro Se Pl. (Dkt. No. 61-19); Aff. of Serv. (Dkt. No. 61-20).) However, Plaintiff did not timely respond to Defendant's 56.1 statement or the instant Motion. (*See generally* Dkt.) Accordingly, the facts in Defendant's 56.1 statement will be deemed admitted.

Once inside the Station, Plaintiff complained of head and wrist injuries, and EMS was called to evaluate him. (*Id.* ¶¶ 26–27; Casparie Decl. Ex. C ("Pl.'s Tr.") 94:4–19.)[2] While the non-party EMS paramedic (the "paramedic") evaluated Plaintiff's head and wrist, Plaintiff became unsteady and was helped to the ground by paramedic and nearby officers. (*Id.* ¶¶ 27–30.) At the time of his arrest, Plaintiff was "wearing trousers belted around his hips and buttocks in a current urban style with his shirt tucked in." (*Id.* ¶ 24.) However, after Plaintiff was helped to the floor, the paramedic "untucked [his] shirt[,] exposing his underwear[,] and took his blood pressure." (*Id.* ¶ 31.) While he lay on the floor "in a lateral recumbent position[,]" Defendant took photographs of Plaintiff's alleged head and wrist injuries. (*Id.* ¶¶ 32, 35–40; *see also* Casparie Decl. Ex. J ("Head Photo"); Casparie Decl. Ex. K ("Wrists Photo").) However, due to the position in which Plaintiff was laying and the position of his handcuffed wrists, a small part of Plaintiff's naked buttocks can be seen in the background of the second photograph. (*See generally* Wrists Photo.) The Parties dispute Defendant's motivation in taking the photographs, with Plaintiff claiming they were taken "to humiliate and degrade [him,]" (Pl.'s Opp'n 1), while

---

[2] Plaintiff testified that he had a concussion and passed out while at the Station, that his wrists were bleeding and scarred from the handcuffs, and that he would provide the Court with videos and medical records documenting these injuries, (Pl.'s Tr. 94:5–97:15). However, Plaintiff did not include these details in his Complaint, and he has not provided these records, photographs, or videos to the Court. (*See generally* Compl.; Dkt.). Additionally, the medical records Plaintiff authorized Defendant to collect on his behalf do not support his allegations of injury, and Defendant could not locate any treatment records from the date of Plaintiff's arrest. (Def.'s 56.1 ¶ 48.) Without any additional evidence in support of his claims, Plaintiff's self-serving deposition testimony is insufficient to create a genuine dispute of material fact as to whether he passed out and suffered a concussion or bleeding wrists. *See Adler v. Penn Credit Corp.*, No. 19-CV-7084, 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (noting that "a non-moving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment" (alterations adopted and quotation marks and citation omitted)); *Smith v. Gray* , No. 19-CV-2169, 2021 WL 3603588, at *5 (E.D.N.Y. Aug. 13, 2021) ("A plaintiff's own unsubstantiated testimony is insufficient to raise a genuine dispute of material fact." (citation omitted)).

Defendant maintains that he took the photographs in accordance with Ossining Police Department policy, (Def.'s 56.1 ¶ 35).

The paramedic subsequently decided to transport Plaintiff to the hospital, and Plaintiff was issued an appearance ticket for his disorderly conduct charge. (*Id.* ¶¶ 45–46.) Although Plaintiff departed the Station in an ambulance, he subsequently got out of the ambulance before it arrived at the hospital. (*Id.* ¶ 47.)

B. Procedural Background

Plaintiff commenced this Action on September 12, 2023, by filing his Complaint and request to proceed in forma pauperis, (*see* Compl.; Req. to Proceed In Forma Pauperis (Dkt. No. 2)), which the Court granted on September 13, 2023, (*see* Order Granting IFP Appl. (Dkt. No. 3)). On October 20, 2023, the Court entered an Order of Service and Summons for Defendant, (*see* Order of Service (Dkt. No. 6); Summons (Dkt. No. 7)), and Defendant filed his Answer on November 20, 2023, (*see* Answer (Dkt. No. 9)). On January 17, 2024, the Court held an initial pre-trial conference and adopted a case management and scheduling order. (*See* Dkt. (minute entry for Jan. 17, 2024); Case Management & Scheduling Order (Dkt. No. 14).) The Parties proceeded to discovery, which closed on September 11, 2024. (*See* Dkt. (minute entry for Sept. 11, 2024).) That same day, Defendant requested leave to file his first Motion for Summary Judgment. (*See* Letter from Paul E. Svensson, Esq. to Court (Sept. 11, 2024) (Dkt. No. 36).) The Court held a status conference on September 19, 2024, during which it set a briefing schedule. (*See* Dkt. (minute entry for Sept. 19, 2024); Scheduling Order (Dkt. No. 37).) Defendant filed his Motion for Summary Judgment and supporting documents on October 30, 2024. (*See* Mot. for Summ. J. (Dkt. No. 42); Statement of Facts (Dkt. No. 43); Decl. of Paul E. Svensson, Esq. (Dkt. No. 44); Mem. of Law (Dkt. No. 45).) Plaintiff did not file any response.

(*See generally* Dkt.) On April 30, 2025, Defendant filed a letter requesting the Court deem his first Motion for Summary Judgment fully submitted, (*see* Letter from Lauren Casparie, Esq. (Apr. 30, 2025) (Dkt. No. 58)), which the Court granted, (*see* Order (Dkt. No. 59)). However, on September 19, 2025, the Court denied Defendant's first Motion for Summary Judgment for failure to comply with Local Rule 56.2 but granted Defendant leave to re-file in compliance with the Court's Local Rules. *Hicks v. Chavez*, No. 23-CV-8088, 2025 WL 2687535, at *2 (S.D.N.Y. Sept. 19, 2025).

Defendant filed the instant Motion on September 26, 2025. (*See* Not. of Mot.; Decl. of Lauren Casparie, Esq. ("Casparie Decl.") (Dkt. No. 61-2); Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (Dkt. No. 61-18); Not. of Local Civ. Rule 56.1 Stmt.) Plaintiff did not file any response. (*See generally* Dkt.) On January 21, 2026, Defendant requested the Court deem the Motion fully submitted, (*see* Letter from Lauren Casparie, Esq. to Court (Jan. 21, 2026) (Dkt. No. 63)), which the Court granted, (*see* Order (Dkt. No. 64)). On January 27, 2026, Plaintiff belatedly submitted his Opposition to the instant Motion. (*See* Pl.'s Opp'n to Def. Chavez's Mot. for Summ. J. ("Pl.'s Opp'n") (Dkt. No. 66).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion," the nonmovant must "create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). Even where a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (emphasis and citation omitted)).

B. Analysis

1. Fourth Amendment Claim

Plaintiff alleges that his Fourth Amendment right to be free from sexual harassment was violated when Chavez photographed his alleged injuries because the photographs "captured intimate areas of Plaintiff's body while [he] was restrained and unable to protect his dignity." (Pl.'s Opp'n 1.) Plaintiff specifically takes issue with the second photograph, which shows his partially naked buttocks. (*Id.*; *see generally* Casparie Decl. Ex. K ("Wrists Photo").) Defendant maintains that he is entitled to summary judgment because he followed Ossining Police Department procedure in taking the photographs and the inclusion of any portion of Plaintiff's anatomy in the photographs is "purely incidental" and the result of the position Plaintiff "had been placed [in] by EMS [personnel]" and Plaintiff's shirt having been untucked by the paramedic while she examined him. (Def.'s Mem. 7–8.)

"It is well-established . . . that sexual misconduct by a police officer during a 'seizure' is analyzed under the Fourth Amendment." *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *29 (S.D.N.Y. Mar. 26, 2021) (quotation marks omitted) (quoting *Spencer v. Sullivan County*, No. 18-CV-365, 2019 WL 4514011, at *6 (S.D.N.Y. Sept. 19, 2019)); *see also Jackson v. Mastrangelo*, 405 F. Supp. 3d 488, 491 (W.D.N.Y. 2019) (same); *Santiago v. City of Yonkers*, No. 13-CV-1077, 2015 WL 6914799, at *6 (S.D.N.Y. Oct. 30, 2015) (same); *Wright v. City of Waterbury*, No. 07-CV-306, 2011 WL 1106217, at *6 (D. Conn. Mar. 23, 2011) (same). However, claims for "sexual harassment" and "sexual abuse" are not independently cognizable causes of action under the Fourth Amendment, and courts instead evaluate an officer's alleged sexual misconduct as part of the inquiry into whether a search was unreasonable. *See Harris*, 818 F.3d at 57 (outlining the two-step inquiry for assessing an individual's claim that "officers infringed his or her right to bodily privacy" under the Fourth Amendment); *Falls*, 2021 WL 1164185, at *29 (collecting cases).

The search of a person incident to a lawful arrest is presumptively reasonable under the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 235 (1973). "Nevertheless, a search incident to a lawfully executed arrest may still violate the Fourth Amendment, if conducted in an otherwise unreasonable manner." *Wang v. Vahldieck*, No. 09-CV-3783, 2012 WL 119591, at *10 (E.D.N.Y. Jan. 9, 2012); *see also Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407, 417 (S.D.N.Y. 2004) (noting "[a] lawful arrest . . . creates a presumption of reasonableness regarding an attendant search" that "can be rebutted by a showing that the search was conducted in an otherwise unreasonable manner"). "[U]nreasonable, non-consensual, inappropriate touching," for example, "can constitute unreasonable intrusions into a plaintiff's bodily integrity in violation of the Fourth Amendment." *Golden v. County of Westchester*, No.

10-CV-8933, 2012 WL 4327652, at *5 (S.D.N.Y. Sept. 18, 2012) (alterations and quotation marks omitted) (quoting *Fontana v. Raskin*, 262 F.3d 871, 880–81 (9th Cir. 2001)). However, "not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment." *Fontana*, 262 F.3d at 880. "Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable." *Id.* (italics omitted); *see also Wright*, 2011 WL 1106217, at *6 (same).

"[T]here is a right to privacy in one's unclothed or partially unclothed body" that is viewed "through the auspices of the Fourth Amendment or the Fourteenth Amendment," depending on the context. *Poe v. Leonard*, 282 F.3d 123, 138–39 (2d Cir. 2002); *see also Daniels v. City of New York*, No. 16-CV-190, 2018 WL 4119191, at *8 (E.D.N.Y. Aug. 29, 2018) (also recognizing this right); *Soto v. City of New York*, No. 12-CV-6911, 2015 WL 3422155, at *2 (S.D.N.Y. May 28, 2015) (same). "When the alleged conduct occurs in the context of 'a criminal investigation or other form of governmental investigation or activity,' the Fourth Amendment provides the source of the right, whereas the Fourteenth Amendment applies when the conduct does 'not advance any governmental purpose.'" *Soto*, 2015 WL 3422155, at *2 (quoting *Poe*, 282 F.3d at 136–37). Regardless of whether the violation is viewed under the Fourth or Fourteenth Amendment,

> a police officer violates a person's constitutional right to bodily privacy when that officer manipulates the circumstances to view, to photograph, to videotape or otherwise to record that person's unclothed or partially unclothed body without his or her consent where, as here, there is no conceivable investigative or otherwise proper law-enforcement interest advanced by such a viewing.

*Poe*, 282 F.3d at 139.

Plaintiff's claim arises under the Fourth Amendment because the photographs were taken in the context of his arrest for disorderly conduct. *See Caldarola v. County of Westchester*, 343 F.3d 570, 574 (2d Cir. 2003) (finding that the Fourth Amendment was implicated when the

plaintiff was videotaped while in custody); *Lauro v. Charles*, 219 F.3d 202, 212 (2d Cir. 2000) (finding that the Fourth Amendment was implicated when the plaintiff, already in custody, was taken outside the precinct where he was held to be photographed during a perp walk); *Noel Pane v. Town of Greenburgh*, No. 07-CV-3216, 2012 WL 12887036, at *16 (S.D.N.Y. Jan. 10, 2012) (noting that the photographs the defendant took of the plaintiff constituted a seizure under the Fourth Amendment), *aff'd sub nom. Pane v. Gramaglia*, 509 F. App'x 101 (2d. Cir. 2013). Courts assessing an inmate's claim that officers infringed his or her right to bodily privacy must undertake a two-part inquiry: (1) first, the court must determine whether the inmate has exhibited an actual, subjective expectation of bodily privacy; and (2) second, the court must determine whether the prison officials had sufficient justification to intrude on [the inmate's] [F]ourth [A]mendment rights." *Harris*, 818 F.3d at 57 (alterations adopted and quotation marks omitted); *see also Kenlock v. Orange County, N.Y.*, No. 20-CV-3693, 2022 WL 4659272, at *7 (S.D.N.Y. Sept. 30, 2022) (same).

a. Plaintiff's Expectation of Bodily Privacy

Although the Fourth Amendment protects an individual's reasonable expectation of privacy in their person, "[t]he reasonableness of an individual's expectation of privacy will vary in accordance with the circumstances of a given seizure." *Caldarola*, 343 F.3d at 575 (internal quotation marks, alteration, and citation omitted); *Noel Pane*, 2012 WL 12887036, at *16 (same); *see also United States v. Nelson*, No. 20-CR-353, 2022 WL 18636591, at *5 (E.D.N.Y. Oct. 24, 2022) ("The ultimate question, therefore, is whether one's claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances." (quotation marks omitted) (quoting *Rakas v. Illinois*, 439 U.S. 128, 152 (1978)), *report and recommendation adopted in part*, 2023 WL 358421 (E.D.N.Y. Jan. 23, 2023).

Because Plaintiff was an arrestee and not a "private individual, not suspected of any criminal activity," *Poe*, 282 F.3d at 138, he had a diminished expectation of bodily privacy, *see Maryland v. King*, 569 U.S. 435, 462 (2013) ("The expectations of privacy of an individual taken into police custody 'necessarily are of a diminished scope.'" (alteration adopted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 557 (1979))); *see also United States v. Edwards*, 415 U.S. 800, 803 (1974) (noting that "both the person and the property in [an arrestee's] immediate possession may be searched at the station house"); *United States v. Smith*, 673 F. Supp. 3d 381, 395 (S.D.N.Y. 2023) ("[A]n individual subject to arrest and impending detention has substantially 'reduced privacy interests upon being taken into custody.'" (alteration adopted) (quoting *Riley v. California*, 573 U.S. 373, 391 (2014)). However, despite his status as an arrestee, "Plaintiff still retain[ed] 'a limited right to bodily privacy'" during his detention. *Kenlock*, 2022 WL 4659272, at *7 (quoting *Covino v. Patrissi*, 967 F.3d 73, 78 (2d Cir. 1992); *see also Harris*, 818 F.3d at 62 ("We reiterate that inmates retain a limited right of bodily privacy under the Fourth Amendment."); *Swanson v. City of New York*, No. 16-CV-3231, 2017 WL 3130322, at *6 (E.D.N.Y. July 21, 2017) ("[P]retrial detainees 'retain a limited right to bodily privacy under the Fourth Amendment.'" (quoting *Harris*, 818 F.3d at 57–58)). Thus, Plaintiff has satisfied the first requirement for making out a Fourth Amendment claim for violation of bodily privacy.

b. Defendant's Justification for the Intrusion

Turning to the second requirement, in considering whether officers had a sufficient explanation to intrude on a plaintiff's reasonable expectation of privacy, "particularly in the context of pretrial detainees, the Court must analyze such claims by considering: (1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place in which it is conducted." *Kenlock*, 2022 WL 4659272, at *7 (citing *Bell*,

441 U.S. at 559); *see also Harris*, 818 F.3d at 58 n.2 (noting the *Bell* framework "arose in the context of a pretrial detainee strip-search policy").

Here, Defendant had a reasonable justification for intruding on Plaintiff's limited expectation of bodily privacy—namely, needing to document Plaintiff's alleged injuries in accordance with department policy. (Def.'s Mem. 7; *see also* Casparie Decl. Ex. K (Dkt. No. 61-16) (detailing General Order #3.00 § VII(E), which outlines when officers must photograph alleged injuries and stating that "[a] photograph showing lack of injury may be as important as one that shows an injury").) Courts have recognized the need to document potential injuries or lack thereof as a legitimate justification that outweighs a detained individual's expectation of bodily privacy. *See, e.g.*, *Thomas v. Picio*, No. 04-CV-3174, 2008 WL 820740, at *7 (S.D.N.Y. Mar. 26, 2008) ("The photographing of a prisoner's partially[]clothed body by medical staff after the prisoner's involvement in a physical altercation serves the legitimate goal of documenting all potential injuries."); *United States v. Gonzalez*, No. 00-CR-447, 2000 WL 1721171, at *3 (S.D.N.Y. Nov. 17, 2000) (finding the photographing of the defendant in his underwear to be a reasonable intrusion on his expectation of bodily privacy because "the federal prison system's routine administrative investigation procedures, following any prison fight or assault, include reporting any injuries that may have resulted from the incident" and the "photographing the victim and suspects to record injuries and the lack of injuries is part of routine procedure").

Further, it is undisputed that, before any photographs were taken of Plaintiff, the paramedic untucked Plaintiff's shirt and placed him on the floor in a recumbent position in the course of providing medical attention to him. (Def.'s 56.1 ¶¶ 31–32; Chavez Decl. ¶ 8; *see also* Casparie Decl. Ex. G, at 19:22:41–19:24:30 ("BWC 2") (Dkt. No. 61-9) (showing Plaintiff being

helped to the ground and examined by the paramedic).)[3] Although Defendant took the photographs, he played no role in arranging Plaintiff's body or attire in the way in which they are depicted. Consequently, the partial exposure of Plaintiff's unclothed buttocks in the photograph was purely incidental and not reflective of Defendant's intent. *See Brown v. Lardin*, No. 21-CV-1407, 2023 WL 6847349, at *8 (W.D. Pa. Oct. 17, 2023) (finding no constitutional violation where exposure and contact with intimate body parts was only alleged to have occurred while "taking [Plaintiff] to the ground to restrain him and thus was incidental to restoring order"); *Violett v. King*, No. 19-CV-524, 2019 WL 6709391, at *4 (W.D. Ky. Dec. 9, 2019) (holding that "accidental viewing of a prisoner's naked body by a prison guard . . . is not a constitutional violation"); *Gamble v. Bullard*, No. 11-CT-3220, 2013 WL 5979758, at *5 (E.D.N.C. Nov. 12, 2013) (holding "incidental touching of [the] plaintiff's genital area [was] not sufficient" to demonstrate the defendant acted with deliberate indifference under Eighth Amendment), *aff'd,* 563 F. App'x 259 (4th Cir. 2014).

Finally, although Plaintiff claims Defendant intended to "humiliate and degrade" him by taking the photos, (Pl.'s Opp'n 1), Plaintiff introduces no admissible evidence in support of this claim, (*see generally* Dkt.). Simply put, "Plaintiff's conclusory assertions, conjecture, and speculation as to [Defendant's] motivation is not enough to avoid summary judgment." *Ford v. Deacon*, No. 16-CV-1001, 2018 WL 5729352, at *19 (N.D.N.Y. Aug. 27, 2018) (citing *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)), *report and recommendation adopted*, 2018 WL 4501208 (N.D.N.Y. Sept. 20, 2018), *aff'd*, 793 F. App'x 13 (2d Cir. 2019); *see also Taylor v.*

---

[3] In support of his Motion, Defendant submits body worn camera footage of the events in question. (*See generally* Casparie Decl. Ex. F ("BWC 1") (Dkt. No. 61-8); BWC 2.) When referencing this footage, the Court cites to the time stamp in the upper right-hand corner of the video.

*Dollar Tree Stores*, No. 18-CV-1306, 2020 WL 2478663, at *12 (E.D.N.Y. May 13, 2020) ("Conclusory allegations of pretext and illicit motives are insufficient to defeat a summary judgment motion." (quotation marks omitted) (quoting *Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 379 (E.D.N.Y. 2015))).

Accordingly, no reasonable jury could find that the photos amount to an unreasonable invasion of Plaintiff's bodily privacy based on the record evidence. Defendant is therefore entitled to summary judgment on Plaintiff's Fourth Amendment claim. *See Green v. Quiros*, No. 24-CV-1317, 2026 WL 864165, at *11–13 (D. Conn. Mar. 4, 2026) (granting summary judgment on the incarcerated plaintiff's Fourth Amendment claim of invasion of bodily privacy after finding the challenged intrusion to be reasonable based on the undisputed evidence in the record).

2. Qualified Immunity

Defendant also invokes qualified immunity in response to Plaintiff's claim. (Def.'s Mem. 8–9.) However, because the Court finds that the photographs did not constitute an unreasonable search and, accordingly, no underlying constitutional violation, it is not necessary to address whether Defendant is entitled to qualified immunity. *See Smith v. Sullivan*, No. 20-CV-659, 2023 WL 3727447, at *19 (N.D.N.Y. May 3, 2023) ("[T]he [c]ourt need not address qualified immunity as an alternative ground to [the] defendants' summary judgment motion because [the] plaintiff has not established a dispute of material fact as to whether [the] defendants violated his constitutional rights." (collecting cases)), *report and recommendation adopted*, 2023 WL 3722137 (N.D.N.Y. May 30, 2023); *Deandra v. Hicks*, 137 F. Supp. 3d 543, 568 (S.D.N.Y. 2015) ("Because the [c]ourt finds that there was no unreasonable search and

seizure . . . and, accordingly, no underlying constitutional violation, it is not necessary to further address whether [the defendant] is entitled to qualified immunity . . . .").

## III. Conclusion

For the reasons set forth above, Defendant's Motion is granted. The Clerk of the Court is respectfully directed to mail this Opinion and Order to Plaintiff, terminate the pending Motion at Dkt. No. 61, enter judgment for Defendant, and close the case.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge